[Crim. No. 10458. Third Dist. Apr. 3, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY EUGENE HENDERSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Roy M. Dahlberg and Peter P. Vlautin, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PUGLIA, P. J.—Defendant appeals from an order extending for one year his commitment to the Department of Mental Health as a mentally disordered sex offender (Welf. & Inst. Code, § 6316.2).[1]

---

[1] All further statutory references are to sections of the Welfare and Institutions Code unless otherwise indicated. Section 6316.2 as applicable to this appeal is found in Statutes 1978, chapter 1039, section 2. It has since been amended. (See Stats. 1979, ch. 992.)

In 1975 defendant pleaded guilty to violation of Penal Code section 273a, subdivision (1) (willfully causing a child to suffer unjustifiable physical pain and mental suffering under circumstances likely to produce great bodily injury and death). He was adjudged a mentally disordered sex offender (MDSO), committed to the Department of Mental Health and confined in Atascadero State Hospital. In 1978 his term of commitment was extended for one year ending on August 7, 1979. (See *People v. Henderson* (1980) 107 Cal.App.3d 475 [166 Cal.Rptr. 20].) On April 18, 1979, the People again petitioned under section 6316.2 to extend defendant's commitment for an additional year. Following a trial without a jury, the court found defendant to be a person, as described in section 6316.2, who continues to suffer from a mental disorder or defect as a result of which he is predisposed to the commission of sexual offenses to such a degree that he presents a serious threat of substantial harm to the health and safety of others. Accordingly, the court ordered an additional one-year extension of defendant's commitment.[2]

This appeal ensued. We shall affirm.

## I

At the extension hearing, staff members from the Atascadero State Hospital testified to statements made by defendant during the course of his treatment there. There was testimony that defendant stated he was sexually stimulated by violence and had experienced such stimulation when he had beaten the victim of the offense underlying the MDSO commitment, that defendant stated he had experienced "bondage fantasies" and that defendant's stated "concept of the masculine role" is to "do it to others before they do it to you."

█ Defendant's primary contention is that the admission into evidence of the statements made by him to hospital staff violated both his constitutional privileges against self-incrimination (U.S. Const., 5th Amend. Cal. Const., art. I, § 15; Evid. Code, § 940) and the psychotherapist-patient privilege (Evid. Code, §§ 1010, 1012). Since defense counsel did not object at trial to the admission of any of these statements by asserting either privilege, defendant must be regarded as

---

[2]We are informed by counsel that prior to August 1980 defendant's MDSO commitment was again extended for a two-year period (§ 6316.2, subd. (f), as amended, Stats. 1979, ch. 992). Accordingly, a justiciable controversy subsists and the appeal is not moot (*People v. Henderson, supra*, 107 Cal.App.3d at p. 481, fn. 1).

having waived the privileges which he now purports to assert for the first time on appeal. (See *People* v. *Huerta* (1957) 148 Cal.App.2d 272, 274-275 [306 P.2d 505]; cf. *People* v. *Solomos* (1978) 83 Cal.App.3d 945, 953 [148 Cal.Rptr. 248].)

Nonetheless, in the interests of judicial economy, we shall consider the merits of the issues raised relative to admissibility of defendant's statements to treating hospital staff.

■ The privilege against self-incrimination ""'"can be claimed in *any proceedings*, be it criminal or civil, administrative or judicial, investigatory or adjudicatory ... it protects *any disclosures* which the witness may reasonably apprehend *could be used in a criminal prosecution or which could lead to other evidence that might be so used.*"'" (Italics in original; *Cramer* v. *Tyars* (1979) 23 Cal.3d 131, 138 [151 Cal.Rptr. 653, 588 P.2d 793], quoting from *In re Gault* (1967) 387 U.S. 1, 47-48 [18 L.Ed.2d 527, 557, 87 S.Ct. 1428]; *Murphy* v. *Waterfront Com'n* (1964) 378 U.S. 52, 94 [12 L.Ed.2d 678, 704, 84 S.Ct. 1594 conc. opn., White, J.].) The privilege protects against compelled testimonial communications which tend to incriminate the declarant (*People* v. *Rucker* (1980) 26 Cal.3d 368, 378-379 [162 Cal.Rptr. 13, 605 P.2d 843]; *People* v. *Poggi* (1980) 107 Cal.App.3d 581, 586 [165 Cal.Rptr. 758]).

There is no prospect that defendant's extrajudicial statements to hospital staff could be used to incriminate him. Defendant had already been convicted of the underlying offense and obviously could not again be subjected to prosecution for the same crime. More importantly, the purpose of the extension hearing in which the statements were used does not comprehend the defendant's incrimination. ■ Whether an MDSO extension hearing is denominated a civil proceeding (see *In re Bevill* (1968) 68 Cal.2d 854, 858 [69 Cal.Rptr. 599, 442 P.2d 679]) or a criminal proceeding (see *People* v. *Burnick* (1975) 14 Cal.3d 306, 314, 324 [121 Cal.Rptr. 488, 535 P.2d 352]), its objective is confined by section 6316.2 to a determination whether defendant by reason of mental disease, defect or disorder is predisposed to the commission of sexual offenses to the degree that he presents a serious threat of substantial harm to the health and safety of others. Evidence admissible in such a hearing must necessarily have a tendency to prove or disprove the ultimate issue as defined by statute. Moreover, establishment of the ultimate issue does not authorize imposition of a penal sanction, a point made abundantly clear in *People* v. *Saffell* (1979) 25 Cal.3d 223 [157 Cal.Rptr. 897, 599 P.2d 92]: "While judicial attention to the MDSO is

invoked by his commission of a criminal act, the entire statutory scheme providing for the diversion of MDSOs from the mainstream of the criminal justice system clearly indicates that 'in MDSO cases, subsequent confinement of the ... person is for purposes of *treatment*, not punishment' (*In re Moye* [1978] 22 Cal.3d 457 at p. 466 [149 Cal.Rptr. 491, 584 P.2d 1097], italics in original; [citations] .... [¶] [N]ot only is medical treatment the *raison d' etre* of the mentally disordered sex offender law, it is its sole constitutional justification. It is settled that "A person committed as a mentally disordered sex offender is not confined for the criminal offense but because of his *status* as a mentally disordered sex offender." ... (*In re Bevill* (1968) *supra*, 68 Cal.2d 854, 858.)'" (Italics in original; *Saffill, supra*, 25 Cal.3d at pp. 229-230.)

■ Defendant maintains, however, that a 1979 amendment to section 6316.2 supplants treatment (apparently with punishment) as the purpose of extended MDSO commitments. If defendant is correct, the constitutionality of extended commitments would be seriously suspect since "involuntary confinement for the 'status' of having a mental or physical illness or disorder constitutes a violation of the cruel and unusual punishment clauses of both the state and federal Constitutions (Cal. Const., art. I, § 17; U.S. Const., 8th and 14th Amends.) unless it is accompanied by adequate treatment." (*People* v. *Feagley* (1975) 14 Cal.3d 338, 359 [121 Cal.Rptr. 509, 535 P.2d 373].)

We do not interpret the 1979 amendment as rendering the extended commitment proceedings of section 6316.2 constitutionally suspect. While the amendment does remove amenability to treatment as a requisite to an extended commitment (§ 6316.2, subd. (j); Stats. 1979, ch. 992) the statute continues to emphasize the "affirmative obligation" of the Department of Mental Health "to provide treatment for the underlying causes of the [MDSO's] mental disorder" (§ 6316.2, subd. (i)). Such treatment, which must be made available also to the unwilling participant (§ 6316.2, subd. (j); Stats. 1979, ch. 992), affords even those MDSO's "'a realistic opportunity to be cured or to improve his or her mental condition ....'" (*People* v. *Lakey* (1980) 102 Cal.App.3d 962, 974 [162 Cal.Rptr. 653].)

■ Defendant also contends that the explicit entitlement of an MDSO in an extension hearing "to the rights guaranteed under the Federal and State Constitutions for criminal proceedings" (§ 6316.2, subd. (e)) mandates application here of the constitutional privileges

against self-incrimination. We do not so read the command of the statute. Subdivision (e) of section 6316.2 codifies the application of constitutional protections to MDSO proceedings mandated by judicial decision (see, e.g., *People* v. *Burnick, supra*; *People* v. *Feagley, supra*). It does not extend the protection of the constitutional privileges against self-incrimination to testimonial communications which are not incriminatory.

We conclude that admissibility in an extension hearing of statements of an MDSO to hospital staff made in the course of routine therapy sessions or daily activity related to the treatment regime in the hospital setting is not proscribed by the constitutional privileges against self-incrimination.

■ As to the applicability of the patient-psychotherapist privilege, the recent decision of *People* v. *Lakey, supra*, 102 Cal.App.3d at pages 976-977, is dispositive. We quote the relevant text from *Lakey*: "... the psychotherapist/patient privilege is legislatively created and is not absolute. Defendant has been confined as an MDSO because he ... is dangerous. The purpose of his confinement is not merely to treat his mental disorder, but to protect society. An important purpose of the close supervision given persons who are confined as MDSOs is to gather information through which it is possible to predict their future behavior. It seems apparent that one legislative purpose in providing psychotherapy for MDSOs is to monitor their progress so that the decision to release the MDSO from confinement may be based upon as much information as possible. We cannot find any legislative intent to exclude testimony such as that presented in this matter because of any psychotherapist/patient privilege.

"We believe our decision is supported by Evidence Code section 1024 which provides as follows: 'There is no privilege under this article if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger.'

"The proceeding below was premised upon the belief of defendant's psychotherapist, and the medical staff at Atascadero State Hospital, that defendant constitutes 'a serious threat of substantial harm to the health and safety of others,' as provided in section 6316.2. As the Supreme Court stated in *Tarasoff* v. *Regents of University of California*

(1976) 17 Cal.3d 425, 442 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], 'the public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others. The protective privilege ends where the public peril begins.'" (*Lakey, supra,* 102 Cal.App.3d at pp. 976-977.)[3]

## II

Although unclear on what grounds, defendant also contends that his statements to treating personnel should have been excluded because they were inherently unreliable. Under ordinary principles of evidence, however, all relevant evidence is generally admissible and the trier of fact has the responsibility of determining its reliability. (See Evid. Code, § 351.) Moreover, given the purpose of the extension hearing, defendant's statements to hospital staff were not important so much for the truth of the matter stated as for their tendency to reveal defendant's state of mind. Thus any literal untruth in defendant's statements would not deprive them of evidentiary value.

## III

Defendant contends that he could not be recommitted to the state hospital until the court had referred him to the county health director for evaluation. The contention is groundless.

Defendant erroneously relies on *People v. Yarber* (1979) 90 Cal. App.3d 895, 905-907 [153 Cal.Rptr. 875], and *People v. Stanley* (1980) 103 Cal.App.3d 599 [163 Cal.Rptr. 270], both of which involve *original* commitment proceedings pursuant to section 6316. By section 6316, the court has discretion to commit an MDSO to a state hospital or "to the county mental health director for placement in an appropriate public or private mental health facility, approved by such director . . . ." (Stats. 1978, ch. 1291, § 5, p. 4230.) The section specifically requires: "No persons shall be admitted to a state hospital or other facility without having been evaluated by the county mental health director or his or her designee." (*Ibid.*)

---

[3]See also section 5328, subdivision (f), providing that hospital information and records obtained in treating MDSO's are not confidential when disclosed to "the courts, as is necessary to the administration of justice."

By contrast, section 6316.2, which controls recommitment proceedings, does not require such a referral; rather, it permits the court to recommit the defendant to a state treatment facility from which defendant thereafter is eligible for outpatient release. (§ 6316.2, subds. (f), (g); see § 6325.1.)

## IV

Defendant urges contentions by reference to and incorporation of the first two arguments in his appellate brief filed in *People* v. *Henderson, supra,* 107 Cal.App.3d 475. We decline to review contentions so presented and strongly disapprove of the practice. (*In re Ronald E.* (1977) 19 Cal.3d 315, 322, fn. 3 [137 Cal.Rptr. 781, 562 P.2d 684].) In any event, these contentions were discussed and disposed of adversely to defendant in his previous appeal. (*People* v. *Henderson, supra.*)

The judgment is affirmed.

Regan, J., and Blease, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 1, 1981.