# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
JEREMY JOHN FOSTER,
Defendant and Appellant.

S248046

Fourth Appellate District, Division One
D071733

San Diego County Superior Court
SCD204096

August 22, 2019

Justice Liu authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar, Kruger, and Groban concurred

PEOPLE v. FOSTER

S248046


Opinion of the Court by Liu, J.


The Mentally Disordered Offender Act (Pen. Code, § 2960 et seq.) authorizes the Board of Parole Hearings to involuntarily commit individuals convicted of certain felony offenses for mental health treatment as a condition of parole. (Pen. Code, § 2962; all undesignated statutory references are to this code.) Commitment as a mentally disordered offender (MDO) may continue even after an offender's parole term has expired, so long as the district attorney makes a showing that the MDO's mental disorder is not in remission and that the MDO, because of the disorder, represents a substantial danger of physical harm. (§§ 2970, 2972.)

In November 2014, California voters enacted Proposition 47, which reclassified certain drug and theft-related offenses from felonies (or wobblers) to misdemeanors. (*People v. Valencia* (2017) 3 Cal.5th 347, 355.) The initiative also authorizes individuals who have completed felony sentences affected by Proposition 47 to petition to redesignate the felony as a misdemeanor. (§ 1170.18, subd. (f).) Proposition 47 mandates that, with the exception of firearms restrictions, a redesignated conviction "shall be considered a misdemeanor for all purposes." (§ 1170.18, subd. (k) (section 1170.18(k)).)

In 2016, defendant Jeremy John Foster successfully petitioned to have a felony grand theft conviction redesignated as a misdemeanor. Foster now argues that his commitment or

recommitment as an MDO must be vacated because of the absence of a foundational felony.

We conclude that the applicable statutes do not afford Foster the relief he seeks. Under the MDO statute (§§ 2970, 2972), the redesignation of Foster's felony as a misdemeanor does not undermine the validity of his initial civil commitment, which was legally sound at the time the determination was made. Nor does the redesignation alter the criteria governing Foster's eligibility for recommitment as an MDO. Equal protection principles do not compel a different result. Accordingly, we affirm the Court of Appeal's judgment.

## I.

On January 17, 2007, Foster entered a convenience store and grabbed merchandise from behind the counter. Foster falsely told the store clerk that he was a police officer and that he "can do what he wants." The clerk attempted to physically stop Foster; Foster pushed the clerk away and fled. Foster was arrested, and the merchandise was recovered at the scene.

Foster pleaded guilty to one count of felony grand theft. (§ 487, subd. (c).) The court sentenced Foster to 16 months in prison. On September 14, 2010, after Foster had completed his sentence, he was admitted to a state hospital as an MDO as a parole condition under section 2962. Foster's commitment was extended several times, and he was released to an outpatient conditional release program for further treatment on October 10, 2014. Since his initial commitment, Foster has been recommitted as an MDO annually under section 2966, subdivision (c) and under sections 2970 and 2972.

In 2016, after the voters approved Proposition 47, Foster successfully petitioned to have his felony conviction

redesignated as a misdemeanor. Foster then moved to dismiss his recommitment as an MDO on the basis that the redesignation of his theft offense meant he no longer had a qualifying offense for his MDO recommitment. The trial court denied the motion.

The Court of Appeal affirmed. The court adopted the reasoning it set out in *People v. Goodrich* (2017) 7 Cal.App.5th 699, 709–711, which rejected an identical argument. In *Goodrich*, the Court of Appeal concluded that Proposition 47 does not apply to retroactively invalidate a properly imposed MDO commitment or to invalidate subsequent recommitments. The *Goodrich* court, interpreting the criteria for recommitment set forth in section 2972, subdivision (c), reasoned that recommitment "is not predicated upon [an individual's] felony conviction; rather, it is predicated on his current mental state and dangerousness." (*Goodrich*, at p. 711.) The *Goodrich* court further concluded that a challenge to an individual's initial commitment as an MDO through Proposition 47 would amount to inappropriate retroactive relief "for the collateral purpose of invalidating an initial MDO commitment long after it was properly imposed." (*Goodrich*, at p. 711.) Here, the Court of Appeal also rejected an equal protection claim premised on Foster's asserted similarity to individuals committed under the Sexually Violent Predators Act (SVP Act; Welf. & Inst. Code, § 6600 et seq.).

We granted review.

## II.

"Enacted in 1985, the MDO Act requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in

remission." (*People v. Harrison* (2013) 57 Cal.4th 1211, 1218 (*Harrison*).) The MDO Act provides for treatment at three stages of commitment: as a condition of parole (§ 2962), in conjunction with the extension of parole (§ 2966, subd. (c)), and following release from parole (§§ 2970, 2972). (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1061–1062 (*Lopez*).)

Section 2962 enumerates six criteria that must be met at the time of an offender's initial commitment as an MDO: (1) the offender has a severe mental disorder; (2) the disorder is not or cannot be kept in remission without treatment; (3) by reason of the disorder, the offender represents a substantial danger of physical harm to others; (4) the disorder was a cause or aggravating factor in the underlying crime; (5) the offender was treated for the disorder for at least 90 days prior to his or her release; and (6) the underlying crime was either an enumerated felony or an unenumerated crime "in which the prisoner used force or violence, or caused serious bodily injury" or "expressly or impliedly threatened another with the use of force or violence likely to produce substantial physical harm." (§ 2962, subds. (a)–(e); *Harrison, supra*, 57 Cal.4th at pp. 1229–1230.) In *Lopez*, we characterized the latter three factors as " 'static' or 'foundational' factors in that they 'concern past events that once established, are incapable of change.' " (*Lopez, supra*, 50 Cal.4th at p. 1062.) And we characterized the first three factors as "dynamic" or "capable of change over time" and observed that they "must be established at each annual review of the commitment." (*Ibid.*)

Section 2966, subdivision (c) governs the second phase of an offender's MDO commitment. If an offender's parole is continued for a one-year period under section 3001, the statute authorizes the Board of Parole Hearings to continue the

offender's treatment as an MDO. Section 2966, subdivision (c) also authorizes procedures for an offender to challenge his or her recommitment as an MDO, but it explicitly limits that challenge to the three dynamic MDO criteria. (§ 2966, subd. (c) ["[T]he procedures of this section shall only be applicable for the purpose of determining if the parolee [1] has a severe mental disorder, [2] whether the parolee's severe mental disorder is not in remission or cannot be kept in remission without treatment, and [3] whether by reason of his or her severe mental disorder, the parolee represents a substantial danger of physical harm to others."]; see *Lopez*, *supra*, 50 Cal.4th at pp. 1062–1063.)

Sections 2970 and 2972 govern the third and final phase of MDO commitment, which begins once the offender's parole term has expired. Section 2970 permits a district attorney, on the recommendation of medical professionals, to petition to recommit an offender as an MDO for an additional one-year term. An offender will be recommitted if "the court or jury finds [1] that the patient has a severe mental disorder, [2] that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and [3] that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others." (§ 2972, subd. (c).) An MDO may also be released on outpatient status during this third phase if the committing court finds such treatment can be provided "safely and effectively." (§ 2972, subd. (d).)

Foster argues that he is no longer eligible for commitment as an MDO because the felony conviction that initially qualified him for commitment has been redesignated a misdemeanor. (§ 1170.18, subds. (f), (g).) Specifically, Foster points to the provision of section 1170.18 added by Proposition 47 providing

that "[a] felony conviction that is . . . designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes . . . ." (§ 1170.18(k).) The term "for all purposes," Foster contends, necessarily includes the determination of his eligibility for commitment or recommitment as an MDO.

As to Foster's recommitment, the MDO Act indicates that the criteria for recommitment are solely comprised of the three factors *Lopez* characterized as "dynamic." Section 2972, subdivision (c), quoted above, sets forth the criteria for recommitment, and those criteria focus on the continued existence of the individual's mental disorder and dangerousness to others. (See also § 2966, subd. (c) [same "dynamic" criteria for continued commitment during a one-year continuation of parole]; *Lopez, supra*, 50 Cal.4th at p. 1065 ["[O]nce that [initial one-year] period ends, the statutory language contemplates a challenge based only upon the dynamic factors justifying continued treatment."].) The statute offers no indication that the felony or misdemeanor character of the MDO's underlying offense bears on the recommitment determination. Legislative history instead suggests that the Legislature added the requirement that a qualifying offense be one "for which the prisoner was sentenced to prison" to describe the category of individuals subject to initial commitment. (See Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 1296 (1985–1986 Reg. Sess.) as amended Aug. 30, 1985, p. 2 ["Purpose. According to the author's office, 'there is no useful procedure for assuring mental health treatment for prisoners when their mental disorder was a factor in their committing a violent crime following their determinate sentence.' "].)

It is true that Foster, if he had committed his theft offense today, would not be eligible for initial commitment as an MDO. (§ 2962, subds. (b), (e).) But Foster's present ineligibility for an initial commitment is not determinative of his eligibility for recommitment. On this point, *In re C.B.* (2018) 6 Cal.5th 118 is instructive: Two juveniles who had successfully petitioned for redesignation of certain felony convictions as misdemeanors under Proposition 47 argued that they were entitled to expungement of their DNA samples and profiles from the state's DNA databank because their obligation to submit DNA was based on the felony violations now reduced to misdemeanors. (*In re C.B.*, at pp. 122–123, citing §§ 296, 296.1 [requiring felony offenders to provide DNA sample].) We rejected the argument on the ground that "submission and removal of samples have been governed by different standards." (*In re C.B.*, at p. 126.) By statute, eligibility for expungement is confined to circumstances involving "lack of charges, acquittal, appellate reversal, or a finding of factual innocence" (*id.* at p. 128, citing § 299, subd. (b)) and is not authorized "on the ground that conduct previously deemed a felony is now punished only as a misdemeanor" (*In re C.B.*, at p. 128). We held that "a showing of changed circumstances eliminating a duty to *submit* a sample is an insufficient basis for *expungement* of a sample already submitted." (*Ibid.*) Similarly here, initial commitment and recommitment are "governed by different standards" (*id.* at p. 126), and "a showing of changed circumstances" eliminating eligibility for initial commitment "is an insufficient basis" for precluding recommitment of an individual who has already completed his initial commitment (*id.* at p. 128).

Foster points to section 1170.18(k)'s directive that a redesignated felony "shall be considered a misdemeanor for all

purposes." (Cf. *People v. J.S.* (2014) 229 Cal.App.4th 163, 171 ["Even after the expiration of the initial commitment, . . . the initial determination of whether an offender qualifies as an MDO continues to have practical effects. . . . Obviously, if an offender's initial commitment is improper, any extended commitment would also be improper."].) But the redesignation of Foster's underlying felony as a misdemeanor does not undermine the validity of his initial commitment as an MDO. Foster successfully petitioned for redesignation of his felony offense as a misdemeanor in 2016, six years after he was initially committed as an MDO. In *People v. Buycks* (2018) 5 Cal.5th 857 (*Buycks*), we examined the extent to which section 1170.18(k) operated retroactively by applying " 'the principle [codified in Penal Code section 3] that, "in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the [lawmakers] . . . must have intended a retroactive application." ' " (*Buycks*, at p. 880.) We found it "significant" that "subdivisions (a) and (f) of section 1170.18 both clearly reflect an intent to have full retroactive application, whereas subdivision (k) uses no similar language." (*Id.* at pp. 880, 881.) This disparity led us to conclude that "the default presumption applies to [section 1170.18(k)] so that its effect operates only prospectively." (*Id.* at p. 881.)

We went on to recognize a limited exception based on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). "The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between

sentences that are final and sentences that are not.' " (*Buycks*, *supra*, 5 Cal.5th at p. 881.) Section 1170.18(k), we observed, "contains no savings clause indicating that it applies only prospectively, nor does it contain any language indicating that it otherwise limits or subsumes the ordinary presumption long established under the *Estrada* rule." (*Buycks*, at pp. 882–883.) We thus concluded that "the reduction of a felony conviction to a misdemeanor conviction under Proposition 47 exists as 'a misdemeanor for all purposes' prospectively, but, under the *Estrada* rule, it can have retroactive collateral effect on judgments that were not final when the initiative took effect on November 5, 2014. [Citation.] This construction comports with [section 1170.18, subdivision (n)], which explicitly states that '[r]esentencing pursuant to this section does not diminish or abrogate the finality of judgments in any case that does not come within the purview of this section.' " (*Id.* at p. 883, fn. omitted.) We applied this rule in *Buycks* to hold that the redesignation of a felony conviction to a misdemeanor under Proposition 47 operates retrospectively to ameliorate a sentence enhancement predicated on that felony conviction, so long as the judgment containing the sentence enhancement was not final when Proposition 47 took effect. (*Buycks*, at pp. 890–891.)

Section 1170.18(k), as construed in *Buycks*, does not aid Foster. For one thing, it is not clear that an MDO commitment, which we have characterized as "not penal or punitive" (*Lopez*, *supra*, 50 Cal.4th at p. 1061), is a type of judgment covered by *Estrada*'s limited rule of retroactivity as applied to section 1170.18(k). (Cf. *In re C.B.*, *supra*, 6 Cal.5th at p. 131.) In any event, the *Estrada* rule has no applicability to the circumstances here. In *Lopez*, we explained that "the Legislature intended an MDO to be permitted to challenge the static factors justifying

his or her commitment only during the initial one-year period of treatment." (*Lopez*, at p. 1065.) Foster completed his initial year of treatment in 2011, well before the enactment of Proposition 47. It is true that Foster, unlike the petitioner in *Lopez*, is challenging the validity of his initial commitment on a ground (i.e., redesignation of his qualifying felony as a misdemeanor) that could not have been raised during the one-year period of his initial commitment. (See *Lopez*, at pp. 1060–1061, 1066–1067.) But in this respect, Foster is no different than any defendant seeking to apply a felony redesignation to ameliorate a collateral consequence that already became final before Proposition 47 took effect. *Buycks* made clear that the limited retroactivity of section 1170.18(k) based on *Estrada* does not extend that far.

In sum, the redesignation of Foster's theft offense as a misdemeanor does not undermine the continued validity of his initial commitment or preclude Foster's continued recommitment as an MDO.

## III.

Foster further contends that under the logic of *In re Smith* (2004) 42 Cal.4th 1251 (*Smith*), the redesignation of his qualifying felony as a misdemeanor eliminates the basis for his continued commitment and that a failure to so hold would violate equal protection principles. In *Smith*, we construed the SVP Act, which requires a qualifying felony offense to support civil commitment of an offender determined to be a sexually violent predator. (*Smith*, at p. 1257.) We held that "if the People seek to continue SVP proceedings against someone whose present conviction has been reversed, it must retry and reconvict him." (*Id.* at p. 1270.) Foster also argues that he is similarly situated to the defendants in *In re Bevill* (1968) 68

Cal.2d 854 (*Bevill*) and *In re Franklin* (2008) 169 Cal.App.4th 386 (*Franklin*). In *Bevill*, we held that a "mentally disordered sex offender" (now called an SVP) could no longer be involuntarily committed because he was convicted under a portion of a statute that did not prohibit his conduct. (*Bevill*, at pp. 862–863, 856.) In *Franklin*, the Court of Appeal held that an SVP petition was "fatal[ly] flaw[ed]" where the petition was filed after the reversal of the petitioner's felony conviction and his resentencing as a misdemeanant. (*Franklin*, at p. 392.)

" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.] In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.)

Even assuming that SVPs and MDOs are similarly situated for present purposes, the cases Foster cites do not establish differential treatment of the two classes of civil committees. In *Smith*, the reversal of the defendant's felony conviction occurred while the SVP petition was "pending"; the defendant challenged his eligibility for SVP commitment "[a]fter his conviction was reversed, and before the SVP commitment proceedings progressed any further." (*Smith, supra,* 42 Cal.4th at p. 1256.) It was in that context that we found the defendant ineligible for commitment due to the absence of a qualifying

conviction. Here, by contrast, the initial commitment determination occurred years ago, and there is no dispute that Foster had been validly convicted of a qualifying felony at the time that determination was made.

In *Bevill*, we held that because of the invalidity of the petitioner's conviction, his continued commitment as an SVP was also invalid. (*Bevill*, *supra*, 68 Cal.2d at p. 862 ["[A] valid commitment must be based on a valid conviction."].) But that holding flowed from the structure of the statute governing commitment as a "mentally disordered sex offender," under which a criminal proceeding was "suspended" for the duration of a civil commitment. (*Id.* at p. 858; see Welf. & Inst. Code, former § 6302.) We held that under that statute, "[w]hen the proceedings relating to commitment as a mentally disordered sex offender have run their course, the criminal case may be resumed and sentence imposed." (*Id.* at p. 858.) Because "[t]he structure of the statute itself manifest[ed] the integral and continuing relation foreseen to exist between commitment and conviction" (*id.* at p. 861), we held that the invalidation of the petitioner's conviction eliminates a court's "jurisdiction to continue the criminal proceedings . . . , and the entire statutory edifice would become a shambles of meaningless alternatives" if commitment proceedings were allowed to continue (*id.* at pp. 861–862). The distinctive structure of the commitment statute at issue in *Bevill* has no parallel here, and that case did not establish a rule applicable in Foster's case.

*Franklin* comes closer to Foster's circumstances insofar as it involved the reduction of a felony conviction to a misdemeanor instead of an outright reversal. (*Franklin*, *supra*, 169 Cal.App.4th at p. 393.) However, the reduction of the felony in *Franklin* became final before the district attorney filed an SVP

petition against the petitioner; in other words, there was no valid qualifying felony to support the SVP proceeding from the outset. (*Ibid.*)

In sum, we reject Foster's equal protection claim because we find no differential treatment in the commitment regimes governing SVPs and MDOs in light of *Smith*, *Bevill*, or *Franklin*. (See *People v. Pipkin* (2018) 27 Cal.App.5th 1146, 1151 [discussing *Smith* and *Bevill*, and observing that "the distinguishing factor in . . . these cases is that the initial commitment was found to be legally improper *from the outset*" and thus "could not be viewed as supplying the requisite foundation for subsequent recommitments"].) In so holding, we express no view on whether a different analysis or result would be required if an MDO's qualifying offense were reversed on appeal after his one-year period of initial commitment had run. Whether such an individual could be validly recommitted under the criteria set forth in section 2966 or section 2972 is a question not presented by this case. Nor are we confronted here with a felony redesignation that occurred during the pendency of an initial commitment proceeding or during an initial one-year commitment period.

Finally, Foster argues that his continued commitment despite the reduction of his felony conviction to a misdemeanor violates due process of law insofar as it amounts to a commitment based solely on a diagnosis of mental illness and a prediction of dangerousness. As discussed, the redesignation of Foster's felony conviction does not undermine the continuing validity of his initial commitment. Foster makes no argument that recommitment based on present findings of mental illness and dangerousness, following upon a valid initial commitment, violates due process of law.

## CONCLUSION

We affirm the judgment of the Court of Appeal.


**LIU, J.**


**We Concur:**

**CANTIL-SAKAUYE, C.J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Foster

_____

**Unpublished Opinion** XXX NP opn. filed 2/27/18 – 4th Dist., Div. 1
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S248046
**Date Filed:** August 22, 2019

_____

**Court:** Superior
**County:** San Diego
**Judge:** David J. Danielsen

_____

**Counsel:**

Michelle D. Peña, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Randall Einhorn, Stacy Tyler, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michelle D. Peña
3830 Valley Centre Drive, Suite 705, PMB 706
San Diego, CA  92130
(858) 275-3822

Joy Utomi
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9117