Filed 8/12/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B308413 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA417858-02) |
| v. | |
| JOSEPH MANCILLA, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Michael D. Carter, Judge. Affirmed.

Edward J. Haggerty, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Based on his active role in a shootout between rival gangs, Joseph Mancilla was convicted of first degree murder and four counts of attempted willful, deliberate and premeditated murder. In July 2020 the superior court denied Mancilla's petition for resentencing under Penal Code section 1170.95[1] without first appointing counsel or inviting briefing, finding, based on the court's recollection of the trial, as refreshed by reviewing Mancilla's opening brief in his direct appeal, Mancilla had been prosecuted and found guilty under the theory of provocative act murder, not under the felony-murder rule or the natural and probable consequences doctrine. Accordingly, the court ruled Mancilla failed to make a prima facie showing of his entitlement to relief. Because the record of conviction establishes Mancilla is ineligible for resentencing as a matter of law, any errors committed by the superior court were harmless. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Mancilla's Trial for Murder and Attempted Murder*

Mancilla, Carlos Rojas and several other individuals (three of whom were minors at the time of the offenses) were charged in an amended information filed October 24, 2014 with the murder on Christmas Day 2010 of Cesar Guerrero (§ 187, subd. (a)), four counts of attempted willful, deliberate and premeditated murder (§§ 664, subd. (a), 187, subd. (a)), conspiracy to commit murder (§ 182, subd. (a)(1)) and active participation in a criminal street gang (§ 182.5). It was specially alleged as to all seven counts that a principal had personally and intentionally discharged a firearm that proximately caused death

---

[1]     Statutory references are to this code.

2

or great bodily injury (§ 12022.53, subds. (d), (e)(1)) and the crimes had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)).

Our opinion affirming Mancilla's and Rojas's convictions summarized the evidence presented at trial. (*People v. Mancilla* (Mar. 14, 2018, B268375) [nonpub. opn.].)[2] In brief, Mancilla, Rojas and Guerrero were members of the Echo Park criminal street gang. On December 25, 2010 Rojas drove Mancilla and Guerrero to an apartment building in the Echo Park neighborhood of Los Angeles where several members of Los Crazy Mexicans (LCM), a rival gang, resided. Mancilla and Guerrero fired handguns at the apartment building, apparently in retaliation for a series of recent gang shootings by LCM. The intended victims shot back. Guerrero was killed in the gunfire; several people inside the building, including two LCM members, were wounded.

As we detailed, "At closing argument, the district attorney argued that Mancilla and Rojas were both guilty of Guerrero's murder under the provocative act theory. According to the district attorney, the evidence showed Mancilla and Guerrero had attacked several LCM members, and that Guerrero had been shot in the ensuing shootout. The district attorney further asserted that Rojas had driven the getaway vehicle, and was liable for all of Mancilla's criminal acts as an aider and abettor." (*People v. Mancilla, supra*, B268375, at \*15.)

---

[2] In his opening brief Mancilla acknowledges the accuracy of the description of the case in our prior opinion "without conceding it is necessarily complete."

## 2. *Jury Instructions*

The court instructed the jury on provocative act murder using CALCRIM No. 560, which, as described in our opinion, explained that, to convict the defendants of murder under the provocative act doctrine, the People had to prove, "(1) [I]n committing the attempted murder, the defendant intentionally did a provocative act; (2) the defendant knew that the natural and probable consequences of the provocative act were dangerous to human life and then acted with conscious disregard for life; (3) in response to the defendant's provocative act, suspected LCM gang members killed Cesar Guerrero; and (4) Guerrero's death was the natural and probable consequence of the defendant's provocative act." (*People v. Mancilla, supra,* B268375, at *16-17.)

The instruction also included language regarding the degree of the offense: "'If you decide the defendant is guilty of murder, you must decide whether the murder is first or second degree. [¶] . . . [¶] The defendant is guilty of first degree murder if the People have proved that his provocative act was an attempted murder committed willfully, deliberately, and with premeditation. . . . [¶] . . . [¶] For a defendant to be found guilty of first degree murder, he personally must have acted willfully, deliberately, and with premeditation when the murder was committed.'" (*People v. Mancilla, supra,* B268375, at *17.)

The trial court referred the jury to its instructions on attempted murder (CALCRIM No. 601) to determine whether Mancilla intended to commit attempted murder and whether Guerrero's death occurred during the commission of attempted murder. That instruction directed the jury, if it found the defendants guilty of attempted murder, to then decide whether the prosecution had proved the additional allegation the

4

attempted murder had been done willfully and with deliberation and premeditation.  (*People v. Mancilla, supra*, B268375, at *22-23.)

The trial court also instructed the jury on the natural and probable consequences doctrine.  After explaining that, under certain circumstances, a person guilty of one crime (here, attempted murder) may also be guilty of other crimes committed at the same time by a coparticipant (murder) if a reasonable person in the defendant's position would have known that the commission of murder by the coparticipant was a natural and probable consequence of the attempted murder, the court instructed, "A co-participant in a crime is the perpetrator or anyone who aided and abetted the perpetrator.  It does not include a victim or innocent bystander."  (*People v. Mancilla, supra*, B268375, at *25.)

3. *Verdict, Sentence and Appeal*

The jury convicted Mancilla and Rojas on all seven counts, finding Mancilla guilty of first degree murder and Rojas guilty of second degree murder.  It found true all special firearm-use and gang enhancement allegations as to both defendants.  The court sentenced Mancilla to an aggregate indeterminate state prison term of 90 years to life and Rojas to an aggregate indeterminate state prison term of 80 years to life.

We affirmed the convictions on appeal, but remanded for a new sentencing hearing to permit the trial court to consider whether to strike the firearm enhancements in light of recent ameliorative legislation and to permit Mancilla (who was 18 years old at the time of the offenses) and Rojas (who was 19 years old at that time) to make a record of information relevant to their eventual youth offender parole hearings

pursuant to *People v. Franklin* (2016) 63 Cal.4th 261. (*People v. Mancilla, supra*, B268375, at p. *66.)

As to issues potentially pertinent to Mancilla's petition for resentencing, we rejected the argument the court's instructions on provocative act murder permitted the jury to convict Mancilla of first degree murder based on a finding Rojas had acted with premeditation in committing attempted murder or without any finding on premeditation at all. (*People v. Mancilla, supra*, B268375, at *23-24.) We also rejected Mancilla's argument he was prejudiced by the court's error in failing to instruct the jury he could not be convicted of first degree murder under the natural and probable consequences doctrine (under *People v. Chiu* (2014) 59 Cal.4th 155), explaining that, under the instructions read as a whole, and in light of the jury's finding Rojas was guilty of second degree murder, not first degree murder, the verdict necessarily showed Mancilla had been convicted under the provocative act theory. (*People v. Mancilla, supra*, B268375, at *34.)

4. *Mancilla's Section 1170.95 Petition for Resentencing*

On February 13, 2020 Mancilla, representing himself, filed a petition for resentencing under section 1170.95. Checking boxes on the printed form petition, Mancilla declared under penalty of perjury that he had been convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to the Penal Code sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). Mancilla requested appointment of counsel during the resentencing process.

6

The superior court summarily denied the petition on July 27, 2020 without appointing counsel for Mancilla or inviting briefing by the prosecutor or Mancilla. The court noted, "[a]s the trial court, this court is very familiar with the facts of the case and the theories on which it was prosecuted. Additionally, this court has refreshed its recollection as to the facts by reviewing the facts as presented in petitioner's opening appellate brief." After briefly reciting the facts, the court ruled Mancilla had failed to make a prima facie showing he was entitled to relief: "Based on the above facts, the petitioner was prosecuted under a provocative act theory and not under either a felony murder or a natural and probable consequences theory of culpability."

Mancilla filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (July 26, 2021, S260598) __ Cal.5th __ [2021 Cal. Lexis 5258, p. 2] (*Lewis*).) With respect to the former change, "to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based

7

solely on his or her participation in a crime.'" (*Gentile*, at pp. 842-843.)

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis, supra,* __ Cal.5th at p. ___ [p. 2]; *Gentile, supra,* 10 Cal.5th at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), requires the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (See *Lewis, supra,* __ Cal.5th at p. ___ [p. 7].)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra,* __ Cal.5th at p. ___ [p. 30].) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to

8

relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id*. at pp. ___, internal quotation marks omitted [*30-31]; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675, review granted Feb. 24, 2021, S266336 [any error in denying petition at prima facie stage without appointing counsel is harmless if the record of conviction "conclusively demonstrates" petitioner is ineligible for relief].)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3); *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974; but see *People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.)  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (See *Gentile, supra,* 10 Cal.5th at pp. 853-854; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981.)

2. *The Error in Denying Mancilla's Petition Without Appointing Counsel Was Harmless*

In *People v. Lewis*, *supra*, __ Cal.5th __ the Supreme Court, resolving a disagreement among the courts of appeal and agreeing with the analysis in *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted November 10, 2020, S264684, held, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any prima facie review under section 1170.95, subdivision (c): "[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis*, at p. ___ [p. 12].) Because Mancilla checked all the necessary boxes on his form petition, the superior court erred by denying his petition without first appointing counsel.

The *Lewis* Court, however, also held a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief pursuant to section 1170.95, subdivision (c), is state law error only, reviewable for prejudice under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, __ Cal.5th at pp. ___, ___ [pp. 3, 34-36].) The Court explained, "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction. [Citations.] However, we have held that 'if a [habeas] petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns.' [Citation.] When 'an indigent petitioner has stated facts sufficient to satisfy the court that a hearing is required, his claim

10

can no longer be treated as frivolous and he is entitled to have counsel appointed to represent him.' [Citations.] [¶] For the same reasons, a petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section 1170.95 petitioning process. [Citation.] At this point, the petitioner has not yet 'stated facts sufficient to satisfy the court that a hearing is required,' but merely endeavors to do so." (*Id.* at pp. ___ [*32-33].)

As discussed in the following section, the record of conviction establishes Mancilla is ineligible for relief under section 1170.95 as a matter of law. Because there is no reasonable probability Mancilla would have obtained a more favorable result if counsel had been appointed and given the opportunity to file a memorandum supporting the petition, the court's error in failing to appoint counsel was harmless. (See *People v. Watson*, *supra*, 46 Cal.2d at p. 836 [an error violating only California law is harmless unless "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error"].)

3. *Mancilla Is Ineligible for Resentencing as a Matter of Law*

a. *Provocative act murder*

In *People v. Washington* (1965) 62 Cal.2d 777 the Supreme Court held a felony-murder conviction was proper only if the defendant or his or her accomplice committed the killing while furthering their common design. "'Murder is the unlawful killing of a human being, with malice aforethought.' [Citation.] Except when the common-law-felony-murder doctrine is applicable, an essential element of murder is an intent to kill or an intent with conscious disregard for life to commit acts likely to kill. [Citation.] The

11

felony-murder doctrine ascribes malice aforethought to the felon who kills in the perpetration of an inherently dangerous felony. . . . [¶] When a killing is not committed by a robber or by his accomplice but by his victim, malice aforethought is not attributable to the robber, for the killing is not committed by him in the perpetration or attempt to perpetrate robbery. . . . To include such killings within section 189 would expand the meaning of the words 'murder . . . which is committed in the perpetration. . . [of] robbery . . .' beyond common understanding." (*Id.* at pp. 780-781.)

The Supreme Court, however, recognized that, although the felony-murder rule was not properly invoked in such a circumstance, the principal committing a serious felony could still be liable for murder under traditional principles of implied malice: "[W]hen the defendant intends to kill or intentionally commits acts that are likely to kill with a conscious disregard for life, he is guilty of murder even though he uses another person to accomplish his objective. [Citations.] [¶] Defendants who initiate gun battles may also be found guilty of murder if their victims resist and kill. Under such circumstances, 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death' [citation], and it is unnecessary to imply malice by invoking the felony-murder doctrine." (*People v. Washington, supra*, 62 Cal.2d at p. 782.)

Seven months after its decision in *People v. Washington, supra*, 62 Cal.2d 777, the Supreme Court in *People v. Gilbert* (1965) 63 Cal.2d 690, after acknowledging its earlier limitation of the reach of the felony-murder rule, articulated basic principles governing a charge of implied malice murder under the

12

provocative act doctrine.[3] As quoted in *People v. Caldwell* (1984) 36 Cal.3d 210, 216, footnote 2, the *Gilbert* Court held, "'When the defendant or his accomplice, with a conscious disregard for life, intentionally commits an act that is likely to cause death, and his victim or a police officer kills in reasonable response to such act, the defendant is guilty of murder. In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life. [¶] Thus, the victim's self-defensive killing or the police officer's killing in the performance of his duty cannot be considered an independent intervening cause for which the defendant is not liable, for it is a reasonable response to the dilemma thrust upon the victim or the policeman by the intentional act of the defendant or his accomplice.'" (See *People v. Mejia* (2012) 211 Cal.App.4th 586, 619 [quoting a portion of this same language from *Gilbert* and citing that case for its holding that "a provocative act murder which occurs when a defendant acts with implied malice may nevertheless be first degree murder if it occurs during the course of a section 189 felony"].)

---

[3] Although *People v. Gilbert, supra,* 62 Cal.2d 690 continues to be cited for its discussion of provocative act murder (see, e.g., *People v. Concha* (2009) 47 Cal.4th 653, 661), the United States Supreme Court in *Gilbert v. California* (1967) 388 U.S. 263 vacated the judgment based on unrelated Sixth Amendment issues "pending the holding of such proceedings as the California Supreme Court may deem appropriate to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction in evidence was in any event harmless error." (*Id.* at p. 272.) On remand the California Supreme Court vacated its decision and reversed the judgment in a July 26, 1967 order, as explained in *People v. Martin* (1970) 2 Cal.3d 822, 834.

"A murder conviction under the provocative act doctrine thus requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing.  [Citations.]  A provocative act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 655; see *People v. Concha* (2009) 47 Cal.4th 653, 661 ["'In all homicide cases in which the conduct of an intermediary is the actual cause of death, the defendant's liability will depend on whether it can be demonstrated that his own conduct *proximately caused* the victim's death . . . .' [Citation.]  '[I]f the eventual victim's death is not the natural and probable consequence of a defendant's act, then liability cannot attach.'  [Citation.]  Our prior decisions make clear that, where the defendant perpetrates an inherently dangerous felony, the victim's self-defensive killing is a natural and probable response"].)

> b. *Mancilla's jury found Mancilla guilty of malice murder without any imputation of malice*

Section 1170.95 authorizes a petition for resentencing only by individuals convicted of murder under the felony-murder rule or the natural and probable consequences doctrine.  As we explained in affirming Mancilla's murder conviction, and as the superior court found, Mancilla was not convicted under either theory; the jury's verdict necessarily showed Mancilla had been convicted of provocative act murder.[4]  Mancilla argues, however,

---

[4]     Although Mancilla appropriately faults the superior court for relying on its recollection of his trial, as refreshed by an

14

that provocative act murder "is a species of natural and probable consequences murder in which the killer is not an accomplice but an intended victim." As such, he contends, section 1170.95 is properly read to include provocative act murder.

For good reason, the argument provocative act murder is properly understood as a subset of the natural and probable consequences doctrine for purposes of Senate Bill 1437 and section 1170.95 has been rejected by every court of appeal that has considered it, including *People v. Swanson* (2020) 57 Cal.App.5th 604, review granted February 17, 2021, S266262; *People v. Johnson* (2020) 57 Cal.App.5th 257; and *People v. Lee* (2020) 49 Cal.App.5th 254, review granted July 15, 2020, S262459. We agree with the analysis in those decisions.

Notwithstanding language fragments from several cases quoted by Mancilla, Supreme Court case law, as discussed, makes clear a murder conviction under the provocative act doctrine requires proof the defendant "personally harbored the

_____

appellate brief, to determine whether he made the requisite prima facie showing for relief under section 1170.95, rather than reviewing documents that are actually part of the record of conviction, Mancilla does not suggest our opinion affirming his conviction is not properly considered or contend he was not convicted of provocative act murder based on his actions in shooting at the LCM apartment building, as we held. To the contrary, Mancilla requested we take judicial notice of the opinion in *People v. Mancilla, supra,* B268375. Accordingly, any error committed by the superior court in this regard was harmless. (See generally *People v. Brooks* (2017) 3 Cal.5th 1, 39 [appellate court will generally affirm a trial court's ruling if correct on any ground, even if the court's reasoning was incorrect]; *People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12 [same].)

mental state of malice." (*People v. Gonzalez*, *supra*, 54 Cal.4th at p. 655; see *People v. Swanson*, *supra*, 57 Cal.App.5th at p. 613, review granted [the malice requirement for provocative act murder "stands in marked contrast to the mens rea contemplated by the natural and probable consequences doctrine"]; *People v. Lee*, *supra*, 49 Cal.App.5th at p. 258, review granted ["[p]rovocative act murder requires proof of malice, which distinguishes it from felony murder and natural and probable consequences murder"].) That is, the defendant (or his or her accomplice) must have acted with implied malice—the defendant knew his or her conduct endangered the life of another and acted with conscious disregard for life. (Compare, e.g., *People v. Caldwell*, *supra*, 36 Cal.3d at p. 216, fn. 2, [defining mental state required for provocative act murder] with, e.g., *People v. Soto* (2018) 4 Cal.5th 968, 974 [defining implied malice murder].) Thus, section 188, subdivision (a)(3), which provides malice shall not be imputed to a person based solely on his or her participation in a crime, does not affect the theory of provocative act murder. Unlike natural and probable consequences liability for murder, which contained no requirement of proof of malice (*Gentile*, *supra*, 10 Cal.5th at p. 845 ["when a person aided and abetted a nonhomicide crime that then resulted in a murder, the natural and probable consequences doctrine allowed him or her to be convicted of murder without personally possessing malice aforethought"]), malice aforethought—conscious disregard for life —is a necessary element of a conviction for provocative act murder, as Mancilla's jury was instructed.

Mancilla's argument based on the inclusion of the concept of natural and probable consequence as an element of provocative act murder is similarly misplaced. As the Supreme Court

16

explained in *People v. Concha, supra*, 47 Cal.4th at page 660, "[M]urder includes both actus reus and mens rea elements.  To satisfy the actus reus element of murder, the act of either the defendant or *an accomplice* must be the proximate cause of death."  Consideration of the natural and probable consequence of the defendant's conduct in the context of provocative murder, as with any case of implied malice murder,[5] relates to proximate cause—that is to the actus reus element of the crime, not the mens rea element that was the focus of Senate Bill 1437.  (See *Concha*, at p. 661 [defining proximate cause for provocative act murder in terms of natural and probable consequence of an act]; see also *People v. Johnson, supra*, 57 Cal.App.5th at pp. 267-268 [passages in Supreme Court provocative murder cases referring to natural and probable consequences relate to proximate cause]; *People v. Lee, supra*, 49 Cal.App.5th at p. 266, review granted [same].)  "[I]n any provocative act case, where by definition an intermediary's act killed the victim, an important question will be whether the defendant's conduct proximately caused the

---

[5] As the court of appeal explained in *People v. Soto* (2020) 51 Cal.App.5th 1043, review granted September 23, 2020, S263939, "For implied malice murder, [the required] intent is that the perpetrator knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.  [Citation.]  The physical component required for implied malice murder is satisfied by the performance of an act, the natural consequences of which are dangerous to life."  (*Id*. at p. 1058, internal quotation marks omitted.)  "Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder without a showing of malice, but it did not exclude from liability persons convicted of murder for acting with implied malice."  (*Id*. at p. 1057.)

17

death.  [Citation.]  The court's analysis of proximate cause in terms of foreseeability of the natural and probable consequences of the defendant's malicious conduct does not somehow bring a provocative act killing within the malice-free natural and probable consequences doctrine."  (*People v. Swanson*, *supra*, 57 Cal.App.5th at p. 614, review granted.)

> c. *Excluding individuals convicted of provocative act murder from resentencing relief under section 1170.95 does not violate equal protection*

Both the federal and California Constitutions guarantee that no person shall be "den[ied] . . . the equal protection of the laws."  (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.)  Equal protection of the laws simply means that similarly situated persons shall be treated in like manner unless there is a sufficiently good reason to treat them differently.  (*People v. Morales* (2016) 63 Cal.4th 399, 408; *Engquist v. Oregon Dept. of Agriculture* (2008) 553 U.S. 591, 602; see *People v. Chatman* (2018) 4 Cal.5th 277, 289 ["our precedent has not distinguished the state and federal guarantees of equal protection for claims arising from allegedly unequal consequences associated with different types of criminal offenses"]; *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 [federal and state equal protection guarantees have similar interpretation].)

"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.  [Citations.]  This initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged.  [Citation.]  In other words, we ask at the threshold

18

whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. Foster* (2019) 7 Cal.5th 1202, 1211-1212 [internal quotation marks omitted]; accord, *People v. Barrett* (2012) 54 Cal.4th 1081, 1107; see *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [to prevail on an equal protection challenge, a party must first establish that "'the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner'"]; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1108, review granted Nov. 13, 2019, S258175.) If the two groups are not similarly situated, there can be no equal protection violation.

Contending individuals convicted of murder under the natural and probable consequences doctrine and those convicted of provocative act murder are similarly situated in terms of their culpability for murder—both groups, he insists, involve defendants who were not the actual killers, who did not intend to kill the victim and who were convicted under a theory of imputed malice—Mancilla argues the Legislature did not have a constitutionally sufficient reason to exclude provocative act murder from the scope of Senate Bill 1437 whether evaluated under either strict scrutiny or rational basis review.[6] The premise for Mancilla's equal protection argument is false.

---

[6] Unless the groups are defined by word or effect as members of a "suspect classification" (such as race, national origin or gender) or the law affects a fundamental right (such as the right to vote or the right to marry), a law will be upheld as long as there is any "*rational* relationship between a disparity in treatment and some legitimate government purpose." (*People v.*

As discussed, the People must prove a defendant personally acted with implied malice to be convicted of provocative act murder.  In contrast, murder under the natural and probable consequences doctrine required no proof of malice.  (*Gentile*, *supra*, 10 Cal.5th at pp. 845, 847.)  Given the express intent of Senate Bill 1437 "to more equitably sentence offenders in accordance with their involvement in homicides" (Stats. 2018, ch. 1015, § l, subd. (b); see *Gentile*, at p. 846), offenders who acted with malice and those who did not are not similarly situated for purposes of section 1170.95.  (See *People v. Johnson*, *supra*, 57 Cal.App.5th at pp. 270-271 ["Johnson is also not similarly situated to persons convicted of felony murder or murder under the natural and probable consequences doctrine because '[u]nlike [these murders], "[a] murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice"'"].)

## DISPOSITION

The postjudgment order denying Mancilla's petition for resentencing is affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.          FEUER, J.

---

*Chatman*, *supra*, 4 Cal.5th at pp. 288-289; *Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 881.)