Filed 10/18/22 P. v. Hernandez CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B313884 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA040557-07) |
| v. | |
| ALFREDO HERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, George G. Lomeli, Judge. Reversed and remanded with directions.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alfredo Hernandez was convicted following a jury trial in 2003 of first degree murder with a special-circumstance finding (lying in wait) and conspiracy to commit murder. The superior court denied his petition for resentencing pursuant to Penal Code former section 1170.95 (now section 1172.6)[1] in July 2021 without an evidentiary hearing, ruling the jury's findings necessarily established he was ineligible for relief as a matter of law.

The superior court was correct that a properly instructed jury's lying-in-wait and conspiracy findings would mean Hernandez, even if not the actual killer, had acted with the intent to kill when assisting or conspiring with the individual(s) who committed the murder. Here, however, those instructions were flawed and determining whether the errors were harmless would require an evaluation of the evidence at trial—factfinding not permitted under section 1172.6 at the prima facie phase of the proceedings. Accordingly, we reverse the order denying Hernandez's petition and remand with directions to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).

---

[1] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.)

Undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Hernandez's Conviction and Appeal*

Victor Flores, a member of the Brown Familia criminal street gang, was found dead in a concrete wash area in the Santa Clarita Valley on January 15, 2002. As sheriff's deputies removed the body, a number of young Latinx men watched from a nearby overpass.

In the early morning of the following day, sheriff's deputies discovered the body of Byron Benito, a member of Mexicanos Malditos Sureños 13 (MMS), a rival gang. Benito had suffered multiple stab wounds and blunt force trauma. The coroner determined three of the stab wounds to Benito's chest were the cause of death.

During the evening between the discovery of the two bodies, a group of young Latinx men met in an apartment where members of Brown Familia frequently gathered. Many of the men present, including Hernandez, were members of the Brown Familia gang. Their conversation concerned Flores's death. Benito was identified as a possible killer.

At some point during the evening the men met in a bedroom with the door closed. According to one of the meeting participants who testified at trial following a plea agreement, several of the men, including Hernandez, proposed finding Benito and stabbing him in retaliation for the murder of Flores. The final version of the plan was for an individual who was not a member of the gang to lure Benito to an isolated location to smoke marijuana. Once there, Benito would be ambushed by waiting Brown Familia gang members. Hernandez suggested they use the parking lot of a strip mall off Soledad Canyon Road in Santa Clarita.

3

The attack went according to plan. Benito arrived at the parking lot in a car with the decoy where he was assaulted by waiting gang members. After initially resisting, Benito attempted to flee; but someone tripped him. As he lay on the ground, the group stabbed, beat and kicked Benito for 10 to 15 minutes before leaving the area and returning to the apartment where they had met earlier.

Hernandez and 15 others were charged in an amended information filed July 7, 2003 with first degree murder (§ 187, subd. (a)) and conspiracy to commit murder (§ 182, subd. (a)(1)) with the special-circumstance allegation the murder had been committed by lying in wait (§ 190.2, subd. (a)(15)) and the further allegation both offenses had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)). At Hernandez's joint trial with four codefendants[2] the prosecutor argued, and the trial court instructed, on the natural and probable consequences doctrine.

With respect to the murder charge, the court instructed pursuant to CALJIC No. 3.02 (7th ed. 2003), "One who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted. [¶] In order to find a defendant guilty of the crime of murder, as charged in Count 1, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime or crimes of assault, assault with a deadly weapon or by means of force likely to produce great bodily

2     Five other codefendants pleaded guilty to various charges; the remaining codefendants were found not guilty at a subsequent trial.

4

injury, or conspiracy to commit assault or assault with a deadly weapon or by means of force likely to produce great bodily injury were committed; [¶] 2. That the defendant aided and abetted those crimes; [¶] 3. That a co-principal in that crime committed the crime of murder; and [¶] 4. The crime of murder was a natural and probable consequence of the commission of the crimes of assault, assault with a deadly weapon or by means of force likely to produce great bodily injury, or conspiracy to commit assault or assault with a deadly weapon or by means of force likely to produce great bodily injury."

The court also instructed pursuant to CALJIC No. 6.11 (7th ed. 2003), "Each member of a criminal conspiracy is liable for each act and is bound by each declaration of every other member of the conspiracy if that act or declaration is in furtherance of the object of the conspiracy. [¶] . . . [¶] A member of a conspiracy is not only guilty of the particular crime that to his or her knowledge his or her confederates agreed to and did commit, but is also liable for the natural and probable consequences of any crime or act of a co-conspirator to further the object of the conspiracy, even though that crime or act was not intended as a part of the agreed upon objective . . . . [¶] You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged in Count 1 was perpetrated by a co-conspirator in furtherance of that conspiracy and was a natural and probable consequence of the agreed upon criminal objective of that conspiracy."

Hernandez and his codefendants were found guilty of both charges with true findings on the special-circumstance and gang

5

allegations. Hernandez was sentenced to a state prison term of life without parole.

We affirmed Hernandez's judgment on appeal. (*People v. Romero* (Oct. 3, 2006, B170885) [nonpub. opn.].) Among the arguments advanced by two of Hernandez's codefendants, joined by the other two codefendants but not Hernandez, was that CALJIC No. 8.69 as given permitted the jury to find the defendants guilty of conspiracy to commit murder without finding that each of them (as opposed to at least two of the multiple coconspirators) had the specific intent to kill. We rejected that argument. We agreed the language of CALJIC No. 8.69 (7th ed. 2003) at issue—that "[a]t least two of the persons to the agreement harbored express malice aforethought, namely a specific intent to kill unlawfully another human being"—was intended to be used only in cases where there was a feigned accomplice and did not "clearly or completely describe the specific intent element for conspiracy to commit murder in this case." Nonetheless, reviewing the erroneous language in the context of the entire instruction, the other instructions given and the record, we concluded there was not a reasonable likelihood the jury misunderstood the requirement that, to convict a particular defendant of conspiracy to commit murder, it had to find that defendant harbored both the specific intent to agree and the specific intent to kill.

2. *Hernandez's Petition for Resentencing*

On October 2, 2020 Hernandez, representing himself, filed a petition for resentencing pursuant to former section 1170.95, checking boxes on the form petition establishing his eligibility for resentencing relief, including the boxes stating he had been convicted of murder under the felony-murder rule or the natural

6

and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (Stats. 2018, ch. 1015) (Senate Bill 1437). Counsel was appointed to represent Hernandez. The prosecutor filed a response to Hernandez's petition and to a supplemental brief he submitted, and appointed counsel filed a reply on behalf of Hernandez.

At a hearing on July 22, 2021, after argument of counsel, the superior court ruled Hernandez had failed to make a prima facie case for relief and was ineligible for resentencing. The court explained on the record that, to find true the lying-in-wait special circumstance, "by implication [the jury] made a determination that the petitioner had an intent to kill." "Similarly," the court continued, "the jury, in convicting the defendant, or petitioner, of conspiracy to commit murder, it was required for them to find that he had possessed and/or harbored in him a specific intent to kill. CALJIC 8.69. As such, he could still be convicted of murder based on the overall record of conviction in spite of the amendments made by Senate Bill 1437."

Hernandez filed a timely notice of appeal.

## DISCUSSION

### 1. *Section 1172.6 (Former Section 1170.95)*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957.) It also authorized,

7

through former section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill 1437's changes to the definitions of the crime. (See *Strong*, at p. 708; *Lewis*, at p. 957; *Gentile*, at p. 843.) As amended by Senate Bill No. 775 (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, these ameliorative changes to the law now expressly apply to attempted murder and voluntary manslaughter.

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id*. at pp. 970-971, internal quotation marks omitted.)

When a petitioner has carried the burden of making the requisite prima facie showing he or she falls within the

8

provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).)  At that hearing the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).)  The petitioner and the prosecutor may also offer new or additional evidence.  (*Ibid.*)

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. . . .  A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (§ 1172.6, subd. (d)(3).)

2. *The Superior Court Erred in Ruling Hernandez Is Ineligible as a Matter of Law for Resentencing Relief*

To reiterate, Hernandez's jury was instructed he could be convicted of Benito's murder if he assisted in the assault on Benito or conspired with his confederates to commit the assault and Benito's murder by one of the other gang members was a natural and probable consequence of Hernandez's participation in that crime.  Even though the jury was also instructed pursuant to CALJIC Nos. 3.00 and 3.01 (7th ed. 2003) that Hernandez could be found guilty of murder as a direct aider and abettor of the actual killer, acting with knowledge of the perpetrator's intent to kill Benito, the instructions on the natural and probable

9

consequences doctrine, without more, would entitle Hernandez to an order to show cause and an evidentiary hearing under section 1172.6 to determine whether he remains guilty of murder under section 188 as amended by Senate Bill 1437—that is, that he acted with malice aforethought and malice was not imputed to him based solely in his participation in the aggravated assault on Benito (§ 188, subd. (a)(3)).

The superior court, which observed at the July 22, 2021 hearing the evidence could support a finding that Hernandez was one of Benito's actual killers in the group attack,[3] concluded there was more—that by virtue of its lying-in-wait and murder conspiracy findings the jury necessarily determined Hernandez had acted with express malice when aiding in the murder of Benito. Both of those jury findings, however, were based on flawed instructions. Neither supports the conclusion Hernandez is ineligible for resentencing relief as a matter of law.

---

[3] The court stated, "Based upon the totality of the evidence presented, it is clear that the petitioner, as reflected by the overall trial evidence, as well as the court of appeal decision, that the petitioner, by his conduct related to the victim's murder, did not only possess an intent to kill at the time that he aided and abetted his fellow gang members in the murder, but, further, that he actually inflicted blunt force trauma with a crowbar. In fact, it might be argued, pursuant to the coroner's testimony, that the petitioner was one of the actual killers of the underlying victim when he participated in the group attack that resulted in the death in question." The court, however, made it clear it was basing its decision to deny the petition on the jury's true finding on the special circumstance and conspiracy charge, not its own evaluation of the evidence at trial.

### a. *Lying in wait as a special circumstance*

Section 190.2, subdivision (a)(15), defines lying in wait as a special circumstance, "The defendant intentionally killed the victim by means of lying in wait." Other than with respect to the felony-murder special-circumstance finding, which is separately defined in section 190.2, subdivision (d), section 190.2, subdivision (c), provides a special-circumstance finding is only authorized for a person not the actual killer "who, with the intent to kill, aids, abets, counsels, induces, solicits, requests, or assists any actor in the commission of murder in the first degree" as to whom one or more special circumstances have been found true. Thus, a properly instructed jury finding pursuant to section 190.2, subdivisions (a)(15) and (c), would mean, as the superior court ruled, the defendant necessarily acted with express malice.

CALJIC Nos. 8.80.1 (Post June 5, 1990 Special Circumstances—Introductory) and 8.81.15.1 (Special Circumstances—Murder by Lying in Wait) (7th ed. 2003) specify the required elements for a lying-in-wait special-circumstance finding for an aider and abettor. But as given at Hernandez's trial, the instructions omitted the essential element of intent. The court first instructed pursuant to the initial paragraphs of CALJIC 8.80.1, "If you find a defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: The defendant intentionally killed the victim by means of lying in wait in violation of Penal Code section 190.2(a)(15)." It failed to included in its modified version of the instruction, as provided in the fourth paragraph of the CALJIC instruction, "If you find that a defendant was not the actual killer of a human being, or if you

11

are unable to decide whether the defendant was the actual killer or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested or assisted any actor in the commission of the murder in the first degree."

The superior court in denying Hernandez's petition based on the jury's lying-in-wait finding partially recognized the significance of that crucial omission, ruling only that the jury "by implication" determined Hernandez had an intent to kill when it found the special-circumstance allegation true. The jury may have reached that decision, but the record does not confirm that inference as a matter of law. As discussed, the jury could have found Hernandez guilty of first degree murder as the natural and probable consequence of aiding the aggravated assault on Benito. The jury was also instructed an aider and abettor is a principal in that crime and, regardless of the extent of participation, is equally guilty as a direct perpetrator. Thus, without the omitted language from CALJIC No. 8.80.1 regarding an aider and abettor's intent to kill, the jury could have found true the special-circumstance allegation as to Hernandez on the mistaken belief that, as an aider and abettor of aggravated assault, he was equally guilty as the direct perpetrator who had committed first degree lying-in-wait murder. Based on this record, the jury's special-circumstance finding does not defeat Hernandez's prima facie case for relief.

b. *Conspiracy to commit murder*

The trial court instructed Hernandez's jury on the charge of conspiracy to commit murder using a variant of CALJIC No. 8.69

12

(7th ed. 2003). The initial wording of CALJIC No. 8.69 reflects the twin specific intent requirements for conspiracy to commit murder, "A conspiracy to commit murder is an agreement entered into between two or more persons with the specific intent to agree to commit the crime of murder and with the further specific intent to commit that murder, followed by an overt act . . . ." (See *People v. Swain* (1996) 12 Cal.4th 593, 600 ["'Conspiracy is a "specific intent" crime. . . . The specific intent required divides logically into two elements: (a) the intent to agree, or conspire, and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also that they intended to commit the elements of that offense,'" italics omitted]; see also *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641 ["'all conspiracy to commit murder is necessarily conspiracy to commit premeditated and deliberated first degree murder'"].)

As we explained in our opinion affirming the convictions of Hernandez and his codefendants on direct appeal, as read to the jury the trial court's instruction was flawed, referring to "at least two of the persons," rather than "each of the persons" in defining the conspiracy's necessary specific intent elements. The court instructed, "In order to prove this crime, each of the following elements must be proved: [¶] 1. Two or more persons entered into an agreement to kill unlawfully another human being; [¶] 2. At least two of the persons specifically intended to enter into an agreement with one or more other persons for that purpose; [¶] 3. At least two of the persons to the agreement harbored express malice aforethought, namely a specific intent to kill unlawfully another human being; and [¶] 4. An overt act was committed in

13

this state by one or more of the persons who agreed and intended to commit murder."

Responding to Hernandez's codefendants' argument that the court committed prejudicial error by failing to include the requirement that the jury must find that each of them, not just any two of the coconspirators, intended to kill Benito, we acknowledged the reference to "at least two" did not properly define the specific intent element necessary to find each of the defendants guilty of conspiracy to commit murder, and stated, "It would have been better if the court had excluded this language from the instruction." (*People v. Romero, supra,* B170885, at p. *142.)[4]  Nonetheless, our opinion concluded reversal of the conviction was not required because, viewing the conspiracy instructions in their entirety, as well as the other instructions given by the court and the evidence in the record, there was no reasonable likelihood the jury misunderstood the instruction. (*Id.* at p.*143.)

A decade after our decision affirming Hernandez's and his codefendants' convictions for conspiracy to commit murder, the Supreme Court in *People v. Garton* (2018) 4 Cal.5th 485 held that asking the jury to find specific intent for "at least two"

---

[4]    The unheeded Use Notes to CALJIC No. 8.69 (7th ed. 2003), at page 388, state, "The alternative bracketed wording has been provided in elements 2, 3 and 4 to accommodate the situation where there is a feigned accomplice. 'The "feigned participation of a false coconspirator or government agent in a conspiracy of more than two people does not negate criminal liability for conspiracy, as long as there are at least two other coconspirators who actually agree to the commission of the subject crime, specifically intend that the crime be committed, and themselves commit at least one overt act.'"'"

coconspirators in a conspiracy with more than two members, none of whom was feigning involvement, was instructional error because it "could potentially lead a jury to find an individual conspirator guilty without finding that he or she possessed a specific intent to agree or to kill." (*Id.* at p. 516.) Eschewing the approach utilized by this court—evaluating whether there was a reasonable likelihood the jury misunderstood the instruction— the Court held the error harmless under either a *Chapman* or *Watson* standard because the jury had found true special-circumstance allegations (multiple murders and murder for financial gain) after being properly instructed with CALJIC No. 8.80.1 that an aider and abettor had to have the specific intent to kill when assisting the direct perpetrator in the commission of first degree murder—the element missing from the lying-in-wait special-circumstance instruction given here. (*Id.* at pp. 516-517.) The Court also reviewed the prosecutor's theory of the case and the evidence in the record to conclude the jury's special-circumstance findings necessarily subsumed a finding that the defendant had entered into an agreement to kill the victims. (*Id.* at p. 519)

Because, as explained, the jury's true finding here on the lying-in-wait special-circumstance allegation was not necessarily based on a finding of express malice, and a review of the record as done by the Supreme Court in *Garton* is not proper at the prima facie stage of a section 1172.6 resentencing proceeding, Hernandez's conviction for conspiracy to commit murder does not establish he is ineligible for resentencing as a matter of law.[5]

---

[5] In light of the Supreme Court's 2018 decision in *People v. Garton, supra,* 4 Cal.5th 485, clarifying the proper analysis for evaluating prejudice resulting from CALJIC No. 8.69

### 3. *Hernandez Has No Constitutional Right To a Jury Determination of His Petition for Resentencing*

In addition to contending the superior court erred in finding he failed to establish a prima facie case for resentencing relief, Hernandez argues, in light of the amendments effected by Senate Bills 1437 and 775, the hearing to determine whether he remains guilty of murder under current sections 188 and 189 should be before a jury with all related rights afforded defendants at a criminal trial. It would violate the constitutional guarantee of equal protection, Hernandez asserts, not to grant section 1172.6 petitioners the same rights as provided when adjudicating criminal misconduct in the first instance.

Hernandez's equal protection argument, purportedly based on principles of "fundamental fairness," is without merit. As Hernandez at least nominally recognizes, the first step in equal protection analysis is to determine whether the state has adopted a classification that affects two or more similarly situated groups

---

instructional error, as well as the different question presented on direct appeal (whether there was a reasonable likelihood the jury misunderstood the instruction, rather than whether the instruction and resulting verdict demonstrate a finding of express malice as a matter of law), we reject the Attorney General's contention our 2006 decision constitutes law of the case, precluding Hernandez from challenging the superior court's ruling his conviction for conspiracy to commit murder necessarily meant the jury found he had the specific intent to commit murder. (See *People v. Stanley* (1995) 10 Cal.4th 764, 787 [law of the case doctrine will not be adhered to where the "controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations"]; *People v. Iraheta* (2017) 14 Cal.App.5th 1228, 1244 [same].)

in an unequal manner.  (*People v. Foster* (2019) 7 Cal.5th 1202, 1211-1212; *People v. Barrett* (2012) 54 Cal.4th 1081, 1107; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  It defies credulity to assert defendants standing trial for murder in the first instance and individuals properly convicted of murder under then-existing law, like Hernandez, who are now seeking retroactive relief pursuant to Senate Bills 1437 and 775, are similarly situated.  (See *People v. Floyd* (2003) 31 Cal.4th 179, 191 ["'[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time'"]; cf. *People v. Mancilla* (2021) 67 Cal.App.5th 854, 869-870 [individuals convicted of murder under the natural and probable consequences doctrine and those convicted of provocative act murder are not similarly situated for purposes of resentencing relief under Senate Bill 1437]; see also *People v. Strong*, *supra*, 13 Cal.5th at p. 718 [Petitioners seeking resentencing under section 1172.6 with pre-*Banks/Clark* felony-murder special-circumstance findings and those with post-*Banks/Clark* findings are not similarly situated.  "One [group] has been determined, beyond a reasonable doubt, to have acted as a major participant with reckless indifference to human life as those terms are now understood under *Banks* and *Clark*, and the other has never been the subject of such a determination"].)

The claim of an equal protection violation fails at the threshold without any need to address the Legislature's valid reasons for treating differently individuals previously convicted of murder seeking resentencing and those first facing trial for the crime.

## DISPOSITION

The postjudgment order denying Hernandez's petition for resentencing is reversed.  On remand the superior court is to issue an order to show cause and to conduct further proceedings in accordance with section 1172.6, subdivision (d).


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.

18