Filed 3/28/23 P. v. Grinder CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RICHARD EUGENE GRINDER,<br><br>Defendant and Appellant. | F084612<br><br>(Super. Ct. No. CF01671189)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from an order of the Superior Court of Fresno County. Michael G. Idiart, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Levy, Acting P. J., Peña, J. and Smith, J.

Defendant Richard Eugene Grinder appeals from an order extending his commitment as a mentally disordered offender (MDO) pursuant to Penal Code sections 2970 and 2972.[1] Defendant specifically argues substantial evidence did not support the trial court's conclusion the three criteria needed to extend his commitment were proven beyond a reasonable doubt. We affirm the trial court's order recommitting defendant.

## PROCEDURAL SUMMARY

Pursuant to a plea agreement, defendant pleaded no contest to committing five counts of lewd and lascivious acts upon a child who was 14 or 15 years old (§ 288, subd. (c)(1)), and one count of oral copulation with a victim who was under 16 years of age (§ 288a, subd. (b)(2), renumbered § 287, subd. (b)(2)). Defendant was subsequently sentenced to a term of six years and four months in state prison, consistent with the plea agreement.

Defendant was initially certified as an MDO in 2005 (§ 2962, subd. (d)). Defendant's most recent petition for recommitment pursuant to sections 2970 and 2972 was filed in January of 2022.[2] At the beginning of his trial on June 23, 2022,[3] defendant waived the right to a jury trial. Following the presentation of evidence, the trial court found the People established beyond a reasonable doubt the statutorily required criteria necessary to justify defendant's recommitment. Thereafter, the court signed an order extending defendant's commitment to the State Department of State Hospitals at Coalinga (CSH) for an additional year, ending May 31, 2023.

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

[2] We have been provided a partial record of previous petitions seeking recommitment. We choose to focus only on the most current petition at issue here.

[3] Defendant agreed to a continuance beyond the expiration date of May 31, 2022, for his then current commitment.

## FACTUAL SUMMARY

### The People's Case

Dr. Joe Debruin, a clinical psychologist employed by CSH, was responsible for completing MDO evaluations under section 2972, and providing testimony on those evaluations when necessary. After relating his experience and credentials, Debruin stated he had completed an evaluation of defendant in September 2021.[4] Debruin explained that before completing these evaluations, he interviews the patient and reviews reports prepared by various individuals involved in that patient's care and treatment. When conducting the interview and reviewing the various reports, Debruin stated he looks for information that will help him reach an opinion he can provide to the courts on whether the patient meets the three criteria laid out in section 2972. Debruin explained the criteria consider whether the patient has a severe mental disorder, whether that disorder is in remission, and whether the patient is still considered dangerous because of their severe mental disorder.

On the first criterion, Debruin testified defendant had been diagnosed with two severe mental disorders: "major depressi[ve disorder], recurrent, with psychotic features," and pedophilic disorder, which was of a "non-exclusive" type. With respect to the major depressive disorder diagnosis, Debruin stated defendant had not been participating in group treatment but was compliant with his medications. The pedophilic disorder diagnosis was based on defendant's history of prior offenses. In defendant's case, this involved the conviction of lewd and lascivious acts with a child under the age of 14, and oral copulation involving a child under the age of 16.

When Debruin asked defendant about these prior acts, defendant told him he had no interest in participating in sex-offender treatment. Defendant then denied the offenses

---

[4]     The evaluation is attached to the petition seeking an order for defendant's recommitment to CSH.

occurred and commented the children were " 'sexualized' " and tried to draw him in to engage in sexual acts. Debruin found these comments by defendant to show he was still struggling with the thinking process that underlies the sexual attraction to minors. Debruin then explained that it is generally accepted in the field that there is no cure for this disorder, and that it can only be managed. Management would involve participation in psychosocial treatment, which defendant told Debruin he did not want to do. As a result, while defendant's major depressive disorder was in remission, Debruin believed his pedophilic disorder was not in remission because it was not being managed.

Debruin further explained his conclusion defendant still posed a danger to society because he continued to refuse to do what was necessary to manage his pedophilic disorder. Specifically, defendant had not completed a relapse prevention plan that would help him understand how to manage his behaviors and access support once he left the facility. Debruin acknowledged that while defendant was doing "a lot of things" to get released, he was not participating in the sex-offender treatment needed to reach the next step. In fact, Debruin later commented that defendant could be in a much better place in 12 months' time if he started participating in such treatment. For these reasons, Debruin concluded defendant met all three criteria specified in section 2972, justifying a recommitment to CSH for another year.

On cross-examination Debruin was asked if the diagnosis of pedophilic disorder was correct in that it usually refers to acts committed with children under the age of 13. Defense counsel instead identified ephebophilia disorder, which involves acts committed with children between the ages of 13–18. Debruin responded that treatment for this condition would not differ significantly from what is already recommended for defendant. Debruin also noted that despite the age range of the victims, defendant would still meet the criteria for having a severe mental disorder.

4.

*The Defense Case*

The defense presented testimony from their own expert, Dr. Harold Seymour. Seymour was also a psychologist specifically trained to do assessments, who was retired from his job as a community college instructor at the time of the hearing. Seymour noted, however, that he continued to conduct assessments from time to time. While Seymour believed defendant suffered from a well-documented case of major depressive disorder, he did not believe that diagnosis was inclusive of psychotic features, and opined that defendant did not meet the criteria for pedophilic disorder. Seymour explained that to be diagnosed with this particular disorder, the victims involved had to be prepubescent, typically younger than 13 years. Seymour also shared his belief that defendant was less of a risk for reoffending due to his current age of 69, and medical issues impacting his mobility.

Seymour interviewed defendant, who told him he was suffering from substance abuse at the time of the offenses. Defendant also denied having a sexual attraction to adolescent boys. However, based on his interview with defendant, and his review of the relevant records provided to him, Seymour did not believe defendant's major depressive disorder was in remission. Seymour also questioned whether defendant could be diagnosed with ephebophilic disorder because the acts he actually pled to did not span a period of at least six months.

During cross-examination, Seymour acknowledged sex-offender treatment for defendant would still be warranted regardless of what the actual diagnosis (pedophilic versus ephebophilic) was for defendant. Seymour also stated that defendant's issues related to the sex offenses intensify his depression, meaning he would continue to need services for both.

5.

## **DISCUSSION**

Defendant contends substantial evidence does not support the conclusion he suffers from a severe mental disorder, and as a result, the additional questions about remission and the potential dangers he poses to the public are moot.

## I.      The Applicable Standard of Review for Recommitment Petitions

" 'Enacted in 1985, the MDO Act requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission.' [Citation.] The MDO Act provides for treatment at three stages of commitment: as a condition of parole (§ 2962), in conjunction with the extension of parole (§ 2966, subd. (c)), and following release from parole (§§ 2970, 2972)." (*People v. Foster* (2019) 7 Cal.5th 1202, 1207.)

"Sections 2970 and 2972 govern the third and final phase of MDO commitment, which begins once the offender's parole term has expired. Section 2970 permits a district attorney, on the recommendation of medical professionals, to petition to recommit an offender as an MDO for an additional one-year term. An offender will be recommitted if 'the court or jury finds [1] that the patient has a severe mental disorder, [2] that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and [3] that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others.' (§ 2972, subd. (c).)" (*People v. Foster*, *supra*, 7 Cal.5th at pp. 1207–1208.) At a recommitment hearing, the issue is whether the defendant's "current condition justifie[s] extension of his commitment." (*People v. Cobb* (2010) 48 Cal.4th 243, 252.)

Review for sufficiency of the evidence in the MDO recommitment context uses the same standard applied when reviewing criminal convictions—the substantial evidence test. (*People v. Labelle* (2010) 190 Cal.App.4th 149, 151.) "In considering the sufficiency of the evidence to support MDO findings, an appellate court must determine

6.

whether, on the whole record, a rational trier of fact could have found that [a] defendant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding." (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082.)

### A. A Severe Mental Disorder

Defendant specifically challenges the evidence supporting the finding he suffers from a severe mental disorder. Defendant essentially believes he was misdiagnosed because the particular disorder he was diagnosed with has been redefined in newer versions of the Diagnostic and Statistical Manual of Mental Disorders (DSM).

For purposes of the legislative scheme governing the recommitment of those designated as MDOs, a severe mental disorder is defined as:

> " … an illness, disease, or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or that grossly impairs behavior; or that demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely. The term 'severe mental health disorder,' as used in this section, does not include a personality or adjustment disorder, epilepsy, intellectual disability or other developmental disabilities, or addiction to or abuse of intoxicating substances." (§ 2962, subd. (a)(2).)

No specific list of mental disorders is provided in this statutory language. This is possibly a recognition of the fact "[m]ental impairments do not always lend themselves to a clearly defined diagnosis and may be subject to a general appraisal of symptoms rather than a recognized label." (5 Cal. Crim. Practice: Motions, Jury Instructions & Sentencing (4th ed. 2022) § 59:8.)

While addressing a different statutory scheme, courts have recognized the complexity of defining mental disorders for purposes of a civil commitment. For instance, our Supreme Court in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1156, stated civil commitments are allowed "as long as the triggering condition consists of 'a volitional impairment rendering [the person] dangerous beyond their control.' " (*Ibid*.,

citing *Kansas v. Hendricks* (1997) 521 U.S. 346, 358.) The *Hubbart* court made clear that due process does not dictate the precise manner in which this "volitional impairment" is statutorily described and does not require the legislature to adopt specific language when drafting civil commitment statutes. (*Hubbart*, at p. 1156.)

In this case, both experts testified defendant suffered from a disorder that would require further treatment before he could be considered to be in remission. Both witnesses also showed some concern for the fact defendant minimized his responsibility for committing the offenses, saying either he placed blame on his teenage victims or was not attracted to adolescent boys. Defendant's own expert testified defendant's thought processes related to the sex offenses intensified his depression.

Again, section 2962 defines a severe mental health disorder as "an illness, disease, or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or that grossly impairs behavior." We believe the evidence presented during the recommitment hearing provides substantial evidence that the condition defendant was suffering from falls within this definition as provided by the Legislature in section 2962.

We must address one argument defendant relies upon to challenge the strength of the evidence on the issue of his specific mental disorder. The argument concerns Debruin's review of the probation report created at the time he entered his plea of no contest. Because Debruin considered the information provided in that report on the charges that were dismissed, defendant contends Debruin's conclusions either lack a proper foundation or are somehow flawed.

When reaching an opinion, an expert may rely on information, whether or not admissible, "that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates …." (Evid. Code, § 801, subd. (b).) " 'A qualified expert is entitled to render an opinion on the criteria necessary for an MDO commitment, and may base that opinion on information that is itself

8.

inadmissible hearsay if the information is reliable and of the type reasonably relied upon by experts on the subject.' " (*People v. Nelson* (2012) 209 Cal.App.4th 698, 707.) Information contained within a probation report, though technically hearsay, is considered reliable information upon which an expert may rely when forming an opinion. (*People v. Martin* (2005) 127 Cal.App.4th 970, 976, disapproved on another ground in *People v. Achrem* (2013) 213 Cal.App.4th 153; *People v. Sanchez* (2016) 63 Cal.4th 665, 681 ["Neither the hearsay doctrine nor the confrontation clause is implicated when an out-of-court statement is not received to prove the truth of a fact it asserts."].)

Substantial evidence supports the trial court's finding defendant was still suffering from a severe mental disorder.

## B.     Remission

"The term 'remission' means a finding that the overt signs and symptoms of the severe mental health disorder are controlled either by psychotropic medication or psychosocial support. A person 'cannot be kept in remission without treatment' if during the year prior to the question being before … a trial court, the person has been in remission and has been physically violent, except in self-defense, or … has not voluntarily followed the treatment plan. In determining if a person has voluntarily followed the treatment plan, the standard is whether the person has acted as a reasonable person would in following the treatment plan." (§ 2962, subd. (a)(3).)

Debruin testified that while he believed defendant's depression was in remission, his pedophilic disorder was not in remission. In contrast, defense expert Seymour testified that he did not believe defendant's depression was in remission and that his issues related to the sex offenses intensified his depression. This evidence supports the conclusion defendant's severe mental disorder is not in remission.

## C.     Substantial Danger of Harm to Others

While " ' "substantial danger of physical harm" does not require proof of a recent overt act' " for purposes of recommitment as an MDO (*In re Qawi* (2004) 32 Cal.4th 1,

24, quoting § 2962, subd. (f)), that does not negate the statutory requirement of proof beyond a reasonable doubt that the person currently poses a substantial danger of physical harm to others, before recommitment as an MDO is permitted. (See § 2972, subds. (a)(2), (c), (e).)

A single opinion by a psychiatric expert that a person is currently dangerous due to a severe mental disorder can constitute substantial evidence to support the extension of an MDO commitment. (See *People v. Bowers* (2006) 145 Cal.App.4th 870, 879; *People v. Zapisek* (2007) 147 Cal.App.4th 1151, 1165.) An expert's testimony in civil commitment cases on a person's dangerousness or likely dangerousness may be the only evidence available on the issue. (*People v. Ward* (1999) 71 Cal.App.4th 368, 374.) However, expert opinion testimony will constitute substantial evidence if it is based on conclusions or assumptions supported by evidence in the record, but not if it is simply based on conjecture or speculation. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)

The expert testimony offered in this case provides substantial evidence that defendant continued to be a danger due to his severe mental disorder. Debruin testified that defendant still posed a danger because he refused to do what was needed to manage the condition and had not completed a relapse prevention plan that would help him understand how to manage his behaviors once he left the facility. While Debruin acknowledged defendant is doing "a lot of things" to get released, he noted defendant is not participating in the sex offender treatment needed to reach the next step, which could potentially change his status in another 12 months. Defendant's own expert supported this conclusion saying defendant was unlikely to go into remission for his depression without engaging in the sex offender treatment. This evidence constitutes substantial evidence supporting the third criteria specified in section 2972, subdivision (c).

10.

**DISPOSITION**

The order recommitting defendant to Coalinga State Hospital until May 31, 2023, is affirmed.